## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LAWRENCE HOLLIN, derivatively on behalf of Nominal Defendant, HARBOR DIVERSIFIED, INC. | |
| Plaintiff, | Case No. _____ |
| v. | |
| RICHARD A. BARTLETT, NOLAN J. BEDERMAN, KEVIN J. DEGAN, CHRISTINE R. DEISTER, and LIAM MACKAY, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| Defendants, | JURY TRIAL DEMANDED |
| and | |
| HARBOR DIVERSIFIED, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Lawrence Hollin ("Plaintiff"), by and through his undersigned attorney, bring this shareholder derivative complaint for the benefit of nominal defendant Harbor Diversified, Inc. ("Harbor Diversified" or the "Company"), against current and former members of the Company's Board of Directors (the "Board") and certain of Harbor Diversified's executive officers seeking to remedy the Individual Defendants' (defined below) violations of federal law and breaches of fiduciary duties. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and as to all other matters, on information and belief based upon, *inter alia*, the investigation conducted by and through Plaintiff's counsel, which investigation included, among other things, a review of the Company's publicly available documents, such as litigation filings, conference call transcripts and announcements, filings with the United States

Securities and Exchange Commission (the "SEC"), press releases published by and regarding Harbor Diversified, other legal filings, news reports, securities analysts' reports about the Harbor Diversified, and other publicly available information.

## NATURE OF THE ACTION

1. This shareholder derivative action (the "Action") is brought on behalf of Harbor Diversified against current and former officers of Harbor Diversified and members of the Board (the "Individual Defendants")[1] and asserts claims for violation of the federal securities laws and breaches of fiduciary duties between at least May 10, 2022, and March 29, 2024 (the "Relevant Period"), that have exposed the Company to massive damages.

2. During the Relevant Period, the Individual Defendants and the Company maintained that Harbor Diversified maintained adequate internal controls, including with respect to revenue recognition and the integrity of its financial statements.

3. According to the Company's public filings:

> The Company's board of directors provides oversight with respect to our management of risk, both as a whole and through the audit committee. The Company's board of directors typically reviews and discusses with management at each of its regular meetings information presented by management relating to our financial and operational results and outlook, including risks related to our business and operations. The audit committee oversees the management of risk as part of its responsibilities related to the oversight of the Company's independent registered public accounting firm, and the review of the Company's financial results and internal control over financial reporting.
>
> ***
>
> The audit committee oversees the Company's corporate accounting and financial reporting process and the audits of the Company's financial statements. For this purpose, the audit committee's principal functions are to: (i) oversee the integrity of the Company's

---

[1] The "Individual Defendants" are Richard A. Bartlett, Nolan J. Bederman, Kevin J. Degan, Christine R. Deister, and Liam Mackay.

financial statements…and compliance with legal, regulatory and disclosure requirements relating to the Company's accounting and financial reporting processes; (ii) review the Company's internal control over financial reporting; and (iii) facilitate communication among the Independent Auditors, the Company's financial and senior management, and the board of directors of the Company.

4. On March 29, 2024, Harbor Diversified filed with the SEC a current report on Form 8-K in which it announced that certain of its previously-issued financial statements would need to be restated as a result of improper revenue recognition. Further, Harbor Diversified disclosed a material weakness in its internal controls. Specifically, the Company disclosed the following:

> On March 26, 2024, the audit committee (the "Audit Committee") of the board of directors of Harbor Diversified, Inc. (the "Company") concluded, after considering the recommendations of management, that the Company's previously issued (i) consolidated financial statements and related disclosures as of and for the year ended December 31, 2022 contained in the Company's Annual Report on Form 10-K, (ii) interim consolidated financial statements and related disclosures contained in the Quarterly Reports on Form 10-Q as of and for the first three quarters of the year ended December 31, 2022, and (iii) interim consolidated financial statements and related disclosures contained in the Quarterly Reports on Form 10-Q as of and for the first three quarters of the year ended December 31, 2023 (collectively, the "Non-Reliance Periods") should no longer be relied upon due to misstatements contained in such financial statements, and that such financial statements should be restated.

5. Defendants breached their fiduciary duties by failing to disclose that the Company and the Individual Defendants did not maintain adequate internal controls, and their positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of the foregoing, a securities class action was filed against the Company and Defendants Deister and Mackay captioned *Kothari v. Harbor Diversified, Inc., et al.*, 1:24-cv-00556 (E.D. Wis.) (the "Securities Class Action"). The Securities Class Action alleges that from May 10, 2022 and March 29, 2024, the defendants intentionally or recklessly made and/or

permitted the dissemination of materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects. The Securities Class Action has exposed the Company to massive liability.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)).

8. This Court also has subject matter jurisdiction because Plaintiff's claims raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

11. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, one or more of the Defendants either resides or maintains executive offices in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

4

## PARTIES

*Plaintiff*

13.     Plaintiff is, and has been at all relevant times, a shareholder of Harbor Diversified.

*Nominal Defendant*

14.     Nominal Defendant Harbor Diversified is incorporated under the laws of the State of Delaware, with its principal executive offices located at W6390 Challenger Drive, Suite 203, Appleton, Wisconsin 54914-9120.

*The Individual Defendants*

15.     Richard A. Bartlett ("Bartlett") has served as a member of the Board since August 2011. Bartlett is Co-Owner at Eastshore Aviation LLC, Managing Director at Resource Holdings Ltd. and Member of New York State Bar Association. Mr. Bartlett was previously Chairman at Air Wisconsin Airlines LLC and Chairman at The American University in Cairo. Bartlett has an undergraduate degree from Princeton.

16.     Nolan J. Bederman ("Bederman") has served as a member of the Board and on Air Wisconsin's board of managers since March 2019. Bederman is Chairman at Berkeley Street Solutions, Inc., Executive Chairman of LifeSpeak, Inc. and Managing Partner at Bederman Capital Corp. Bederman is also on the board of Effigi, Inc. and Manager of Air Wisconsin Airlines LLC. Bederman serves as a member of the Audit Committee.

17.     Kevin J. Degan ("Degan") has served as a member of the Board and on Air Wisconsin's board of managers since March 2019. Degan is the Founder of Greencastle Advisors LLC, Kevin J. Degen is on the board of Air Wisconsin Airlines LLC and Vice President at Burnham Sterling & Company LLC. Degan has an undergraduate degree from Princeton.  Degan serves as a member of the Audit Committee.

5

18.     Defendant Christine R. Deister ("Deister") is the Company's Chief Executive Officer ("CEO"). Deister has served as the Company's Chief Executive Officer and Secretary since March 2020. Deister has also served as Chief Financial Officer and Secretary of Lotus Aviation Leasing, LLC and Chief Financial Officer and Secretary of Air Wisconsin Funding LLC ("AWF") since April 2020, as well as President, Secretary and a director of Harbor Therapeutics, Inc. since April 2020. Deister has served as Vice President of Special Projects for Air Wisconsin since April 2020 and also serves as Executive Vice President and a director of AWAC Aviation, Inc. ("AWAC"). Deister was initially appointed Chief Financial Officer and Secretary of the Company in March 2012, and was subsequently appointed President of the Company in July 2019. Previously, Deister served as President and Chief Executive Officer of Air Wisconsin from April 2015 until March 2019 and as Chief Executive Officer until March 2020. From November 2014 to April 2015, Deister served as Chief Commercial Officer of Air Wisconsin. From November 2004 to November 2014, Deister served as Executive Vice President and Chief Financial Officer of Air Wisconsin.

19.     Defendant Liam Mackay ("Mackay") is as the Company's Chief Financial Officer ("CFO"). Mackay has served as Air Wisconsin's Chief Financial Officer since January 1, 2021. Prior to joining Air Wisconsin, Mr. Mackay served as Director, United Express Commercial Strategy at United, since 2019. From 2016 to 2019, Mr. Mackay served as Director, United Express Regional Partner Management at United, and from 2011 to 2016, he served as Senior Manager, Financial Analysis at United. Mr. Mackay graduated from The University of Western Ontario in 2005 with a Bachelor of Administrative & Commercial Studies in Commercial Aviation Management degree.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

20.    By reason of their positions as officers and/or directors of Harbor Diversified, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed Harbor Diversified and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Harbor Diversified in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Harbor Diversified and its shareholders.

21.    Each director and officer of the Company owes to Harbor Diversified and its shareholders the fiduciary duty of good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

22.    Because of their positions of control and authority as directors and/or officers of Harbor Diversified, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

23.    To discharge their duties, the officers and directors of Harbor Diversified were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

24.    The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Harbor Diversified, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

25.    As senior executive officers and directors of a publicly-traded company whose

7

stock was registered with the SEC pursuant to the Securities Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

26. To discharge their duties, the officers and directors of Harbor Diversified were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Harbor Diversified were required to, among other things:

(a) Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Harbor Diversified's own Code of Conduct;

(b) Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) Remain informed as to how Harbor Diversified conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

8

(d)     Establish and maintain systematic and accurate records and reports of the business and internal affairs of Harbor Diversified and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Harbor Diversified's operations would comply with all applicable laws and Harbor Diversified's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate; and

(g)     Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

27.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Harbor Diversified.

28.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Harbor Diversified and were at all times acting within the course and scope of such agency.

29.     Each of the Individual Defendants breached his or her fiduciary duties as alleged herein, both individually and in concert with the other Defendants.

9

## HARBOR DIVERSIFIED'S CODE OF CONDUCT

30.     While not publicly available, Harbor Diversified maintains a Code of Business Conduct and Ethics ("Code") that applies to all the Individual Defendants.  The Company's public filings indicate that:

> We have adopted a code of business conduct and ethics (the "Code of Ethics") applicable to our principal executive officer, principal financial officer, principal accounting officer and other officers that have a financial or operational oversight role, which is intended to comply with the requirements of Item 406 of Regulation S-K.
>
> \*\*\*
>
> The Code of Ethics generally restricts our directors, officers and employees from trading in the Company's common stock, subject to limited exceptions. These policies and procedures are designed to ensure the Company's board of directors, together with the audit committee, will have the necessary authority and governance frameworks in place to make decisions independent of the Company's management.

## ADDITIONAL DUTIES OF THE AUDIT COMMITTEE

31.     While not publicly available, Harbor Diversified's public filings indicate the existence of an Audit Committee charter that provides the following:

> The audit committee oversees the management of risk as part of its responsibilities related to the oversight of the Company's independent registered public accounting firm, and the review of the Company's financial results and internal control over financial reporting.
>
> \*\*\*
>
> The audit committee oversees the Company's corporate accounting and financial reporting process and the audits of the Company's financial statements. For this purpose, the audit committee's principal functions are to: (i) oversee the integrity of the Company's financial statements…and compliance with legal, regulatory and disclosure requirements relating to the Company's accounting and financial reporting processes; (ii) review the Company's internal control over financial reporting; and (iii) facilitate communication among the Independent Auditors, the Company's financial and

10

senior management, and the board of directors of the Company.

## BACKGROUND

32.    Defendant Harbor Diversified describes itself as "a non-operating holding company that is the parent of a consolidated group of subsidiaries, including AWAC Aviation, Inc. ("AWAC"), which is the sole member of Air Wisconsin Airlines LLC ("Air Wisconsin"), a regional air carrier. Harbor is also the direct parent of three other subsidiaries: (1) Lotus Aviation Leasing, LLC ("Lotus"), which leases flight equipment to Air Wisconsin, (2) Air Wisconsin Funding LLC ("AWF"), which provides flight equipment financing to Air Wisconsin, and (3) Harbor Therapeutics, Inc. ("Therapeutics"), which is a non-operating entity with no material assets."

33.    On May 9, 2022, after market hours, Harbor Diversified filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2022 (the "1Q22 Report"). Attached to the 1Q22 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

34.    The 1Q22 Report contained the following statement about the Company's internal controls:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of March 31, 2022, the last day of the period covered by this Quarterly Report. Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of March 31, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

11

35.     The 1Q22 Report contained the following graph, displaying the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**
**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2022 | 2021 |
| | (unaudited) | |
| **Operating Revenues** | | |
| Contract revenues | $66,968 | $ 49,756 |
| Contract services and other | 7 | 18 |
| **Total Operating Revenues** | 66,975 | 49,774 |
| **Operating Expenses** | | |
| Payroll and related costs | 26,601 | 22,751 |
| Aircraft fuel and oil | 51 | 13 |
| Aircraft maintenance, materials and repairs | 14,501 | 11,072 |
| Aircraft rent | — | 23 |
| Other rents | 1,613 | 922 |
| Depreciation, amortization and obsolescence | 6,644 | 6,500 |
| Payroll Support Program | — | (27,914) |
| Purchased services and other | 3,765 | 3,150 |
| **Total Operating Expenses** | 53,175 | 16,517 |
| **Income From Operations** | 13,800 | 33,257 |
| **Other (Expense) Income** | | |
| Interest income | 574 | 370 |
| Interest expense | — | (362) |
| Loss on marketable securities | (2,423) | (57) |
| Other, net | 210 | — |
| **Total Other (Expense) Income** | (1,639) | (49) |
| **Net Income Before Taxes** | 12,161 | 33,208 |
| **Income Tax Expense** | 2,898 | 7,983 |
| **Net Income** | $ 9,263 | $ 25,225 |
| Preferred stock dividends | 198 | 198 |
| Net income available to common stockholders | $ 9,065 | 25,027 |
| **Basic Earnings per share** | $    0.19 | $    0.46 |
| **Diluted Earnings per share** | $    0.14 | $    0.35 |
| **Weighted Average Common Shares:** | | |
| Basic | 47,638 | 54,863 |
| Diluted | 64 535 | 71,662 |

36.     The statements in the 1Q22 Report were false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

37.     On August 10, 2022, Harbor Diversified filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2022 (the "2Q22 Report"). Attached to the 2Q22 Report were certifications pursuant to SOX signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an

12

evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of June 30, 2022, the last day of the period covered by this Quarterly Report. Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of June 30, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

38. The 2Q22 Report contained the following graph, displaying the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
| --- | --- | --- | --- | --- |
| | 2022 | 2021 | 2022 | 2021 |
| | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $77,923 | $ 52,845 | $144,891 | $102,601 |
| Contract services and other | 7 | 15 | 14 | 33 |
| **Total Operating Revenues** | 77,930 | 52,860 | 144,905 | 102,634 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 27,694 | 25,012 | 54,295 | 47,763 |
| Aircraft fuel and oil | 34 | 44 | 85 | 57 |
| Aircraft maintenance, materials and repairs | 16,336 | 12,540 | 30,837 | 23,612 |
| Aircraft rent | — | 44 | — | 67 |
| Other rents | 1,657 | 1,263 | 3,270 | 2,185 |
| Depreciation, amortization and obsolescence | 6,674 | 6,499 | 13,318 | 12,999 |
| Payroll Support Program | — | (22,256) | — | (50,170) |
| Purchased services and other | 3,514 | 3,110 | 7,279 | 6,260 |
| **Total Operating Expenses** | 55,909 | 26,256 | 109,084 | 42,773 |
| **Income From Operations** | 22,021 | 26,604 | 35,821 | 59,861 |
| **Other (Expense) Income** | | | | |
| Interest income | 688 | 456 | 1,262 | 826 |
| Interest expense | — | (327) | — | (689) |
| Gain (loss) on marketable securities | (3,602) | 43 | (6,025) | (14) |
| Gain on extinguishment of debt | — | 228 | — | 228 |
| Other, net | 691 | 68 | 901 | 68 |
| **Total Other (Expense) Income** | (2,223) | 468 | (3,862) | 419 |
| **Net Income Before Taxes** | 19,798 | 27,072 | 31,959 | 60,280 |
| **Income Tax Expense** | 4,717 | 6,551 | 7,615 | 14,534 |
| **Net Income** | $15,081 | $ 20,521 | 24,344 | $ 45,746 |
| Preferred stock dividends | 198 | 198 | 396 | 396 |
| Net Income available to common stockholders | $14,883 | $ 20,323 | 23,948 | $ 45,350 |
| **Basic Earnings per share** | $ 0.32 | $ 0.37 | $ 0.51 | $ 0.83 |
| **Diluted Earnings per share** | $ 0.24 | $ 0.28 | $ 0.38 | $ 0.63 |
| **Weighted Average Common Shares** | | | | |
| Basic | 46,519 | 54,466 | 47,075 | 54,664 |
| Diluted | 63,019 | 71,455 | 63,773 | 71,613 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

39. The statements in the 2Q22 Report were false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

40. On November 21, 2022, Harbor Diversified filed with the SEC its quarterly report

13

on Form 10-Q for the period ended September 30, 2022 (the "3Q22 Report"). Attached to the 3Q22 Report were certifications pursuant to SOX signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

41. The 3Q22 Report contained the following statement about the Company's internal controls:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of September 30, 2022, the last day of the period covered by this Quarterly Report. Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of September 30, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

42. The 3Q22 Report contained the following graph, displaying the Company's revenues:

| | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2022 | 2021 | 2022 | 2021 |
| | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $68,389 | $ 71,866 | $213,280 | $174,467 |
| Contract services and other | 21 | 21 | 35 | 54 |
| **Total Operating Revenues** | 68,410 | 71,887 | 213,315 | 174,521 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 26,801 | 29,056 | 81,096 | 76,819 |
| Aircraft fuel and oil | 49 | 51 | 134 | 108 |
| Aircraft maintenance, materials and repairs | 17,494 | 13,877 | 48,331 | 37,489 |
| Aircraft rent | — | — | — | 67 |
| Other rents | 1,617 | 1,572 | 4,887 | 3,757 |
| Depreciation, amortization and obsolescence | 6,639 | 6,570 | 19,957 | 19,569 |
| Payroll Support Program | — | (16,146) | — | (66,316) |
| Purchased services and other | 3,310 | 3,684 | 10,589 | 9,944 |
| **Total Operating Expenses** | 55,910 | 38,664 | 164,994 | 81,437 |
| **Income From Operations** | 12,500 | 33,223 | 48,321 | 93,084 |
| **Other (Expense) Income** | | | | |
| Interest income | 840 | 611 | 2,102 | 1,437 |
| Interest expense | — | (138) | — | (827) |
| Loss on marketable securities | (3,749) | (92) | (9,774) | (106) |
| Gain on extinguishment of debt | 53 | 10,135 | 53 | 10,363 |
| Other, net | 885 | 566 | 1,786 | 634 |
| **Total Other (Expense) Income** | (1,971) | 11,082 | (5,833) | 11,501 |
| **Net Income Before Taxes** | 10,529 | 44,305 | 42,488 | 104,585 |
| **Income Tax Expense** | 2,507 | 8,026 | 10,122 | 22,560 |
| **Net Income** | $ 8,022 | $ 36,279 | $ 32,366 | $ 82,025 |
| Preferred stock dividends | 198 | 198 | 594 | 594 |
| Net income available to common stockholders | $ 7,824 | $ 36,081 | $ 31,772 | $ 81,431 |
| **Basic Earnings per share** | $ 0.17 | $ 0.67 | $ 0.68 | $ 1.49 |
| **Diluted Earnings per share** | $ 0.13 | $ 0.51 | $ 0.50 | $ 1.14 |
| **Weighted Average Common Shares:** | | | | |
| Basic | 45,776 | 54,153 | 46,637 | 54,491 |
| Diluted | 62,276 | 71,155 | 63,268 | 71,468 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

43.     The statements in the 3Q22 Report were false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

44.     On April 3, 2023, Harbor Diversified filed with the SEC its annual report on Form 10-K for the period ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to SOX signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

45.     The 2022 Annual Report contained the following statement about the Company's internal controls:

As required by Rule 15d-15(b) under the Exchange Act, our management, under the supervision and with the participation of our principal executive officer, our principal financial officer and our principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of December 31, 2022, the last day of the period covered by this Annual Report. Based on this evaluation, our management, including our principal executive officer, our principal financial officer and our principal accounting officer, concluded that, as of December 31, 2022, our disclosure controls and procedures were effective at the reasonable assurance level.

46. The 2022 Annual Report contained the following graph, displaying the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Consolidated Statements of Operations (in thousands, except share values)**

| Year ended December 31, | 2022 | 2021 |
|---|---|---|
| **Operating Revenues** | | |
| Contract revenues | $280,737 | $247,519 |
| Contract services and other | 126 | 60 |
| **Total Operating Revenues** | 280,863 | 247,579 |
| **Operating Expenses** | | |
| Payroll and related costs | 109,831 | 106,881 |
| Aircraft fuel and oil | 169 | 171 |
| Aircraft maintenance, materials and repairs | 67,096 | 56,145 |
| Aircraft rent | — | 67 |
| Other rents | 6,582 | 5,375 |
| Depreciation, amortization and obsolescence | 26,327 | 26,552 |
| Purchased services and other | 14,992 | 13,535 |
| Payroll Support Program | — | (66,316) |
| **Total Operating Expenses** | 224,997 | 142,410 |
| **Income From Operations** | 55,866 | 105,169 |
| **Other (Expense) Income** | | |
| Interest income | 7,024 | 4,520 |
| Interest expense | (3) | (847) |
| Loss on marketable securities | (8,826) | (1,158) |
| Gain on extinguishment of debt | 53 | 10,363 |
| Other, net | (11) | — |
| **Total Other (Expense) Income** | (1,763) | 12,878 |
| **Net Income Before Taxes** | 54,103 | 118,047 |
| **Income Tax Expense** | 14,993 | 25,421 |
| **Net Income** | $ 39,110 | $ 92,626 |
| Preferred stock dividends | $ 792 | $ 792 |
| Net income available to common stockholders | $ 38,318 | $ 91,834 |
| Basic earnings per share | $ 0.83 | $ 1.69 |
| Diluted earnings per share | $ 0.61 | $ 1.29 |
| Weighted average common shares: | | |
| Basic | 46,359 | 54,321 |
| Diluted | 62,957 | 71,249 |

*See accompanying notes to consolidated financial statements.*

47. The 2022 Annual Report was false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

16

48.     On May 15, 2023, Harbor Diversified filed with the SEC its quarterly report on Form 10-Q for the period ended March 31, 2023 (the "1Q23 Report"). Attached to the 1Q23 Report were certifications pursuant to SOX signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

49.     The 1Q23 Report contained the following statement about the Company's internal controls:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of March 31, 2023, the last day of the period covered by this Quarterly Report. Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of March 31, 2023, our disclosure controls and procedures were effective at the reasonable assurance level.

50.     The 1Q23 Report contained the following graph, displaying the Company's revenues:

17

Harbor Diversified, Inc. and Subsidiaries

**Consolidated Statements of Operations (in thousands, except per share amounts)**

| | Three Months Ended March 31, | |
|---|---|---|
| | 2023 | 2022 |
| | (unaudited) | |
| **Operating Revenues** | | |
| Contract revenues | $ 59,037 | $66,968 |
| Contract services and other | 95 | 7 |
| **Total Operating Revenues** | 59,132 | 66,975 |
| **Operating Expenses** | | |
| Payroll and related costs | 29,768 | 26,601 |
| Aircraft fuel and oil | 102 | 51 |
| Aircraft maintenance, materials and repairs | 19,349 | 14,501 |
| Other rents | 1,594 | 1,613 |
| Depreciation, amortization and obsolescence | 6,357 | 6,644 |
| Purchased services and other | 4,442 | 3,765 |
| **Total Operating Expenses** | 61,612 | 53,175 |
| **(Loss) Income from Operations** | (2,480) | 13,800 |
| **Other Income (Expense)** | | |
| Interest income | 1,366 | 784 |
| Interest expense | (1) | — |
| Gain (Loss) on marketable securities | 1,740 | (2,423) |
| Other, net | (13) | — |
| **Total Other Income (Expense)** | 3,092 | (1,639) |
| **Net Income Before Taxes** | 612 | 12,161 |
| **Income Tax (Benefit) Expense** | (270) | 2,898 |
| **Net Income** | $ 882 | $ 9,263 |
| Preferred stock dividends | 252 | 198 |
| Net income available to common stockholders | $ 630 | $ 9,065 |
| **Basic Earnings per share** | $ 0.01 | $ 0.19 |
| **Diluted Earnings per share** | $ 0.01 | $ 0.14 |
| **Weighted average common shares:** | | |
| Basic | 44,980 | 47,638 |
| Diluted | 61,480 | 64,535 |

*See accompanying condensed notes to unaudited consolidated financial statements.*

51.     The statements in the 1Q23 Report were false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

52.     On August 14, 2023, Harbor Diversified filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2023 (the "2Q23 Report"). Attached to the 2Q23 Report were certifications pursuant to SOX signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

53.     The 2Q23 Report contained the following statement about the Company's internal controls:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal

18

financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of June 30, 2023, the last day of the period covered by this Quarterly Report. Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of June 30, 2023, our disclosure controls and procedures were effective at the reasonable assurance level.

54.     The 2Q23 Report contained the following graph, displaying the Company's revenues:

**Harbor Diversified, Inc. and Subsidiaries**

**Condensed Consolidated Statements of Operations (in thousands, except per share amounts)**

|  | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
|  | 2023 | 2022 | 2023 | 2022 |
|  | (unaudited) | | (unaudited) | |
| **Operating Revenues** | | | | |
| Contract revenues | $ 50,970 | $77,923 | $110,007 | $144,891 |
| Contract services and other | 102 | 7 | 197 | 14 |
| **Total Operating Revenues** | 51,072 | 77,930 | 110,204 | 144,905 |
| **Operating Expenses** | | | | |
| Payroll and related costs | 29,953 | 27,694 | 59,721 | 54,295 |
| Aircraft fuel and oil | 221 | 34 | 323 | 85 |
| Aircraft maintenance, materials and repairs | 17,869 | 16,336 | 37,218 | 30,837 |
| Other rents | 1,474 | 1,657 | 3,068 | 3,270 |
| Depreciation, amortization and obsolescence | 6,370 | 6,674 | 12,727 | 13,318 |
| Purchased services, legal and other | 7,532 | 3,514 | 11,974 | 7,279 |
| **Total Operating Expenses** | 63,419 | 55,909 | 125,031 | 109,084 |
| **(Loss) Income from Operations** | (12,347) | 22,021 | (14,827) | 35,821 |
| **Other Income (Expense)** | | | | |
| Interest income | 1,429 | 1,382 | 2,795 | 2,166 |
| Interest expense | (11) | — | (12) | — |
| (Loss) gain on marketable securities | (795) | (3,602) | 945 | (6,025) |
| Gain on extinguishment of debt | 70 | — | 70 | — |
| Other, net | (1) | (3) | (14) | (3) |
| **Total Other Income (Expense)** | 692 | (2,223) | 3,784 | (3,862) |
| **Net (Loss) Income Before Taxes** | (11,655) | 19,798 | (11,043) | 31,959 |
| **Income Tax (Benefit) Expense** | (2,486) | 4,717 | (2,756) | 7,615 |
| **Net (Loss) Income** | (9,169) | 15,081 | (8,287) | 24,344 |
| Preferred stock dividends | 305 | 198 | 557 | 396 |
| **Net (loss) income available to common stockholders** | $ (9,474) | $14,883 | $ (8,844) | $ 23,948 |
| **Basic (Loss) Earnings per share** | $ (0.21) | $ 0.32 | $ (0.20) | $ 0.51 |
| **Diluted (Loss) Earnings per share** | $ (0.21) | $ 0.24 | $ (0.20) | $ 0.38 |
| **Weighted average common shares:** | | | | |
| Basic | 44,277 | 46,519 | 44,626 | 47,075 |
| Diluted | 44,277 | 63,019 | 44,626 | 63,773 |

*See accompanying condensed notes to unaudited condensed consolidated financial statements.*

55.     The statements in the 2Q23 Report were false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

56.     On November 14, 2023, Harbor Diversified filed with the SEC its quarterly report

on Form 10-Q for the period ended September 30, 2023 (the "3Q23 Report"). Attached to the 3Q23 Report were certifications pursuant to SOX signed by Defendants Deister and Mackay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

57.     The 3Q23 Report contained the following statement about the Company's internal controls:

> As required by Rule 15d-15(b) under the Exchange Act, our management, including our principal executive officer, principal financial officer and principal accounting officer, carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 15d-15(e) under the Exchange Act) as of September 30, 2023, the last day of the period covered by this Quarterly Report. Based on this evaluation, our management, including our principal executive officer, principal financial officer and principal accounting officer, concluded that, as of September 30, 2023, our disclosure controls and procedures were effective at the reasonable assurance level.

58.     The 3Q23 Report contained the following graph, displaying the Company's revenues

**Harbor Diversified, Inc. and Subsidiaries**

**Condensed Consolidated Statements of Operations (in thousands, except per share amounts)**

| | | Three Months Ended September 30, | | | |
|---|---|---|---|---|---|
| | | 2023 | | 2022 | |
| | | (unaudited) | | | |
| **Operating Revenues** | | | | | |
| Contract revenues | $ | 49,958 | $ | 68,389 | $ |
| Contract services and other | | 98 | | 21 | |
| **Total Operating Revenues** | | 50,056 | | 68,410 | |
| **Operating Expenses** | | | | | |
| Payroll and related costs | | 29,444 | | 26,801 | |
| Aircraft fuel and oil | | 115 | | 49 | |
| Aircraft maintenance, materials and repairs | | 11,175 | | 17,494 | |
| Other rents | | 1,459 | | 1,617 | |
| Depreciation, amortization and obsolescence | | 6,398 | | 6,639 | |
| Purchased services, legal and other | | 6,537 | | 3,310 | |
| **Total Operating Expenses** | | 55,128 | | 55,910 | |
| **(Loss) Income from Operations** | | (5,072) | | 12,500 | |
| **Other Income (Expense)** | | | | | |
| Interest income | | 1,540 | | 1,732 | |
| Interest expense | | — | | — | |
| Loss on marketable securities | | (955) | | (3,749) | |
| Gain on extinguishment of debt | | — | | 53 | |
| Other, net | | — | | (7) | |
| **Total Other Income (Expense)** | | 585 | | (1,971) | |
| **Net (Loss) Income Before Taxes** | | (4,487) | | 10,529 | |
| **Income Tax (Benefit) Expense** | | (799) | | 2,507 | |
| **Net (Loss) Income** | | (3,688) | | 8,022 | |
| Preferred stock dividends | | 358 | | 198 | |
| **Net (loss) income available to common stockholders** | $ | (4,046) | $ | 7,824 | $ |
| **Basic (Loss) Earnings per share** | $ | (0.09) | $ | 0.17 | $ |
| **Diluted (Loss) Earnings per share** | $ | (0.09) | $ | 0.13 | $ |
| **Weighted average common shares:** | | | | | |
| Basic | | 43,654 | | 45,776 | |
| Diluted | | 43,654 | | 62,276 | |

59.     The statements in the 3Q23 Report were false and misleading as a result of improper revenue recognition and because Defendants failed to maintain adequate controls.

60.     On March 29, 2024, Harbor Diversified filed with the SEC a current report on Form 8-K in which it announced that certain of its previously-issued financial statements would need to be restated as a result of improper revenue recognition (the "Restatement Announcement").

21

Further, Harbor Diversified disclosed a material weakness in its internal controls.

61. Specifically, the Restatement Announcement stated the following:

On March 26, 2024, the audit committee (the "Audit Committee") of the board of directors of Harbor Diversified, Inc. (the "Company") concluded, after considering the recommendations of management, that the Company's previously issued (i) consolidated financial statements and related disclosures as of and for the year ended December 31, 2022 contained in the Company's Annual Report on Form 10-K, (ii) interim consolidated financial statements and related disclosures contained in the Quarterly Reports on Form 10-Q as of and for the first three quarters of the year ended December 31, 2022, and (iii) interim consolidated financial statements and related disclosures contained in the Quarterly Reports on Form 10-Q as of and for the first three quarters of the year ended December 31, 2023 (collectively, the "Non-Reliance Periods") should no longer be relied upon due to misstatements contained in such financial statements, and that such financial statements should be restated.

The Audit Committee's conclusion was based on management's review of the accounting for certain revenue under the capacity purchase agreement (the "United Agreement") previously entered into between Air Wisconsin Airlines LLC ("Air Wisconsin"), a wholly owned subsidiary of the Company, and United Airlines, Inc. ("United"). As discussed in greater detail below, management determined that the decision to recognize all of the approximately $52.3 million in revenue and interest income (the "Disputed Amounts") in the consolidated financial statements and related disclosures prepared for the Non-Reliance Periods relating to certain disputed amounts under the United Agreement was not consistent with Accounting Standards Codification Topic 606, Revenue from Contracts with Customers ("ASC 606"). The Audit Committee discussed its conclusion and management's determination, and the other matters described in this Current Report on Form 8-K (this "Current Report"), with the Company's independent registered public accounting firm, Grant Thornton LLP ("Grant Thornton").

\*\*\*

**Accounting Analysis**

Upon its receipt of the Arbitration Award, the Company commenced an analysis of the complex accounting treatment leading to the recognition of the Disputed Amounts in revenue and interest income in light of the unexpected outcome of the arbitration. Following

22

extensive discussions between Company management and Grant Thornton, as well as consultation between management and additional accounting and legal advisors, the Company concluded that (i) its prior determination as to the amount of the disputed revenue and interest income under the United Agreement was inconsistent with the guidance in ASC 606, resulting in an accounting error as that concept is defined in the accounting guidance, and (ii) its financial statements for the Non-Reliance Periods should be restated. Although cumulative revenue for the Non-Reliance Periods will change by approximately $52.3 million, this will be partially offset by changes to the provision for income taxes in 2022 and an income tax benefit in 2023 on the statements of operations included in the consolidated financial statements. In addition, the balance sheets included in the consolidated financial statements will change to remove the related receivables from United, as well as take into account the related changes to the income tax provision/benefit. The Company also expects to file amended tax returns and seek reimbursement of certain tax payments made based on the previously recognized revenue and interest income. As a result, the Company expects to record an income tax receivable related to the amended returns. The Company continues to assess the scope of the expected adjustments to the consolidated financial statements.

\*\*\*

**Controls and Procedures Assessment**

Company management continues to assess its internal control over financial reporting and disclosure controls and procedures in light of its determination to restate the financial statements. The Company will report a material weakness in internal control over financial reporting in its Annual Report on Form 10-K for the year ended December 31, 2023. Because of the weakness, the Company's management concluded that it did not maintain effective internal control over financial reporting and disclosure controls and procedures for the Non-Reliance Periods. Company management, at the direction of the Audit Committee, continues to evaluate appropriate remediation actions.

62. On this news, the price of Harbor Diversified stock fell by $0.28 per share, or 14.25%, to close at $1.73 on April 1, 2024.

63. The statements contained herein were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's

23

business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Harbor Diversified's financial statements from May 9, 2022 to the present were misstated due to improper revenue recognition; (2) Harbor Diversified lacked adequate internal controls; and (3) as a result, Defendants' statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all times.

64. Defendants breached their fiduciary duties because they intentionally determined to cause Harbor Diversified to violate the law because of its positive effect on profits. By consciously elevating the Company's short-term profitability over its legal obligations, the Individual Defendants exposed Harbor Diversified to substantial monetary and reputational damage.

65. Defendants also repeatedly failed to take red flags seriously and delayed the implementation of appropriate internal controls to ensure the Company operated in compliance with the law. Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures, and failed to make a good faith effort to correct the problems or prevent their recurrence. As detailed herein, Defendants were put on notice that Harbor Diversified was violating the law or was otherwise headed for a corporate trauma, but did nothing in response and/or became aware of risks that the corporation was violating the law or otherwise heading toward a corporate trauma, yet did nothing. Defendants had numerous opportunities to address the Company's noncompliance and lack of reporting protocols and information controls. By failing to make a good faith effort to implement and monitor an oversight system and by consciously disregarding their duty to learn of and investigate red flags, Defendants failed to exercise due care and failed to satisfy their duty of

loyalty to the Company and its stockholders.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

66.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

67.     Harbor Diversified is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

68.     Plaintiff is a current shareholder of Harbor Diversified and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

69.     At the time this action was commenced, the three-member Board was comprised of Richard A. Bartlett, Nolan J. Bederman, Kevin J. Degan (collectively, the "Demand Board" or "Director Defendants")). Accordingly, Plaintiff is only required to show that two members of the Demand Board cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

70.     Each member of the Demand Board, are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

71.     The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. The Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs.

The Individual Defendants authorized and/or permitted the Company to violate the law, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

72.     The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

73.     As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. As Board members of Harbor Diversified, the Director Defendants knew, or should have known, the material facts surrounding Harbor Diversified's compliance with federal securities laws, and the accuracy of its public statements.

74.     Each member of the Demand Board served the Board throughout the entire Relevant Period.

75.     The Company's public filings concede Bartlett is not independent.

76.     Defendants Bederman and Degan served as members of the Audit Committee throughout the Relevant Period. The Audit Committee is and was responsible for, *inter alia*, overseeing revenue recognition, the integrity of the Company's financial statements, and compliance.  Director Defendants Bederman and Degan, as members of the Audit Committee breached their fiduciary duties by declining to act in the face of repeated red flags that the

26

Company was deficient in meeting its compliance and reporting obligations. Those Director Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihood.

77.     The entire Demand Board is subject to the Company's Code. The Code goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the members of the Demand Board to also adhere to Harbor Diversified's standards of business conduct. The Director Defendants violated the Code because they knowingly or recklessly allowed the Company to violate the law. As such, the entire Demand Board faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

78.     Demand in this case is excused because each of the directors derive substantial revenue from the Company, they control the company, and are indebted to each other. Bartlett was previously Chairman at Air Wisconsin Airlines LLC. Bederman has served on Air Wisconsin's board of managers since March 2019, and Degen is also on the board of Air Wisconsin Airlines LLC. Defendant Deister, the Company's CEO, has also served as CFO and Secretary of Air Wisconsin Funding LLC since April 2020;[2] and Defendant Mackay, the Company's CFO, has served as Air Wisconsin's CFO since January 1, 2021. Moreover, Bartlett and Degan, who serve together on the Audit Committee, also both have degrees from and affiliations with Princeton University. Additionally, Bederman and Mackay also both have degrees

---

[2] Deister has served as Vice President of Special Projects for Air Wisconsin since April 2020 Previously, Deister served as President and Chief Executive Officer of Air Wisconsin from April 2015 until March 2019 and as Chief Executive Officer until March 2020. From November 2014 to April 2015, Deister served as Chief Commercial Officer of Air Wisconsin. From November 2004 to November 2014, Deister served as Executive Vice President and Chief Financial Officer of Air Wisconsin.

from and affiliations with The University of Western Ontario. These and other conflicts of interest have precluded the current directors from calling into question the Director Defendants' conduct or taking any remedial actions to redress the conduct alleged herein. Accordingly, the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action due to their close relationship with, and indebtedness to, the Director Defendants named herein.

79.     The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of Harbor Diversified. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Harbor Diversified, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

80.     If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Harbor Diversified to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

81.     Accordingly, a pre-suit demand on the Demand Board is futile and excused.

<u>COUNT I</u>
**Against Individual Defendants for Violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934**

82.     Plaintiff incorporates by reference and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

83.     During the Relevant Period, the Individual Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct designed to falsify the Company's press releases, public statements made in conference calls, and periodic and current reports filed with the SEC.

84.     The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Harbor Diversified not misleading.

85.     The Individual Defendants, as top executives and directors at the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Harbor Diversified.

86.     The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the schemes and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to

Case 1:24-cv-00903-WCG   Filed 07/18/24   Page 29 of 35   Document 1

ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the schemes set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

87. The Individual Defendants participated in the scheme to defraud with the purpose and effect of defrauding Harbor Diversified. Not only is Harbor Diversified now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also the victim of the unlawful scheme perpetrated upon Harbor Diversified by the Individual Defendants. With the price of its common stock trading at artificially-inflated prices due to the Individual Defendants' misconduct, the Individual Defendants caused the Company to repurchase its own shares at artificially-inflated prices, damaging Harbor Diversified.

88. By virtue of the foregoing, the Individual Defendants have violated § 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

89. No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## COUNT II
### Against Individual Defendants for Violations of Section 20(a) of the Securities Exchange Act of 1934

90. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

91. The Individual Defendants, by virtue of their positions with Harbor Diversified and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Harbor Diversified and each of its officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence and exercised the same to cause Harbor Diversified to engage in the illegal

conduct and practices complained of herein.

92.     Plaintiff, on behalf of Harbor Diversified, has no adequate remedy at law.

<u>**COUNT III**</u>
**Against the Individual Defendants for Breach of Fiduciary Duty**

93.     Plaintiff incorporates by reference and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

94.     The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

95.     The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

96.     The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

97.     As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

98.     As a result of the misconduct alleged herein, the Individual Defendants are liable

to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT IV
### Against the Individual Defendants for Unjust Enrichment

99.     Plaintiff incorporates by reference and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

100.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Harbor Diversified.

101.     The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Harbor Diversified that was tied to the performance or artificially inflated valuation of Harbor Diversified, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

102.     Plaintiff, as a shareholder and representative of Harbor Diversified, seeks restitution from the Individual Defendants and seek an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

103.     Plaintiff on behalf of Harbor Diversified has no adequate remedy at law.

## COUNT V
### Against the Individual Defendants for Waste of Corporate Assets

104.     Plaintiff incorporates by reference and realleges each and every allegation in the

foregoing paragraphs as though fully set forth herein.

105. The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Harbor Diversified's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

106. As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, among other things, incurring and paying defense costs in connection with the Securities Action, and approving performance-based compensation linked to the Company's perceived successes.

107. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

108. Plaintiff on behalf Harbor Diversified has no adequate remedy at law.

<u>**COUNT VI**</u>
**Against Defendants Deister and Mackay for Contribution Under Sections 10(b)**
**and 21D of the Exchange Act**

109. Plaintiff incorporates by reference and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

110. The Company and Defendants Deister and Mackay are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Deister's and Mackay's willful and/or reckless violations of their obligations as officers and

33

directors of the Company.

111. Defendants Deister and Mackay because of their positions of control and authority as executive officers were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

112. Accordingly, Defendants Deister and Mackay are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

113. As such, the Company is entitled to receive all appropriate contribution or indemnification from Defendants Deister and Mackay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B. Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C. Awarding punitive damages;

D. Awarding costs and disbursements of this action, including reasonable attorneys'

fees, accountants' and experts' fees, costs, and expenses; and

      E.      Granting such other and further relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury.


Date: July 18, 2024                  Respectfully submitted,


            **ATOLLES LAW, S.C.**

            By: _/s/ K. Scott Wagner_
                K. Scott Wagner
                State Bar No. 1004668
                Matthew J. Thome
                State Bar No. 1113463
                222 E Erie Street, Suite 210
                Milwaukee, WI 53202
                Wagner: (414) 285-0892
                Thome:  (414) 285-0825
                swagner@attolles.com
                mthome@attolles.com

                _Attorneys for Plaintiff_

                Of Counsel:

            **RIGRODSKY LAW, P.A.**
                Seth D. Rigrodsky
                Timothy J. MacFall
                Vincent A. Licata
                825 East Gate Boulevard, Suite 300
                Garden City, NY 11530
                (516) 683-3516
                sdr@rl-legal.com
                tjm@rl-legal.com
                vl@rl-legal.com

                _Attorneys for Plaintiff_

35